UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF MANUEL McCALIP,

       Plaintiff,

v.

METROPOLITAN LIFE INSURANCE CO.,

       Defendant.

_____/

Case No. 08-12806

Honorable Nancy G. Edmunds

**ORDER CANCELLING JULY 22, 2009 HEARING AND GRANTING DEFENDANT'S
MOTION FOR DECLARATORY JUDGMENT [19]**

This matter comes before the Court on Defendant Metropolitan Life Insurance
Company ("MetLife")'s motion for declaratory judgment. The Court finds that the facts and
legal arguments are adequately presented in the parties' motion and response and that the
decision process would not be significantly aided by oral argument. Therefore, pursuant
to E.D. Mich. L. R. 7.1(e)(2), it is hereby ORDERED that the motion shall be resolved as
submitted, and the hearing previously scheduled for July 22, 2009, is hereby CANCELLED.

Defendant MetLife's motion is GRANTED. Applying the holding in *Kennedy v. Plan
Administrator for DuPont Savings & Investment Plan*, 129 S. Ct. 865 (2009), and
considering the relevant ERISA plan documents, MetLife is required to pay benefits under
Manuel McCalip's ERISA-governed life insurance policy to Yvette Jones (formerly Yvette
McCalip) because she is the last person designated by Manuel McCalip, Jr. to receive
those Plan benefits upon his death.

## I.   Facts

This lawsuit concerns the payment of life insurance benefits owed under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461, provided by the decedent Manuel McCalip, Jr.'s former employer, Johnson Controls, Inc., and administered by Defendant MetLife.  By reason of his employment with Johnson Controls, decedent Manuel McCalip was a participant in the Johnson Controls' ERISA Plan.   Defendant MetLife issued a group insurance policy that funded the life insurance benefits payable under the Plan and is the claims fiduciary and Plan Administrator for the Plan.   (Def.'s Ex. A, Summary Plan Description.)  The Plan provides that life insurance benefits are payable to the designated beneficiary:

> NAMING YOUR BENEFICIARY
>
> Your beneficiary is the person you choose to receive the proceeds of your life and AD&D insurance if you die.   In the event of a dependent's death, the employee is the beneficiary.   All dismemberment benefits are payable to the insured person suffering the loss, or the employee if the person is a minor.
>
> To name a beneficiary, you complete a Beneficiary Authorization Form.  If you want to change your beneficiary or add another person, you can do so by filling out a new Beneficiary Authorization Form.   A beneficiary can be one or more people, an organization, including non-profits, or a trust.  If you name two or more people, they will share the benefits equally.   You can also name a contingent beneficiary to receive your benefit if your primary beneficiary is no longer alive at the time of your death.
>
> NOTE:  Only beneficiaries on file with the plan administrator at the time of death will be considered valid.

(*Id.* at 61.)

On June 3, 1999, decedent completed a Beneficiary Authorization Form designating "Yvette McCalip (Jones)," his wife at the time, as the primary beneficiary to receive the life

2

insurance benefits under the Plan in the event of his death.  This June 3, 1999 designation is the last designation filed with Johnson Controls.  (Def.'s Ex. B, 6/3/99 Beneficiary Authorization Form.)

On November 10, 2005, a Consent Judgment of Divorce was entered in Wayne County Circuit Court, terminating the marriage between Yvette Jones McCalip and decedent.  As to life insurance proceeds, the Judgment of Divorce provided that:

> Except as otherwise provided in this judgment, this judgment terminates the rights each party has to the proceeds of the other's contracts or policies of life insurance, endowments, or annuities as a named beneficiary or by assignment during or in anticipation of marriage.

(Def.'s Ex. C, 11/10/05 Consent Judgment of Divorce, ¶ 7.)

On April 11, 2007, Manuel McCalip, Jr. died.  (Def.'s Ex. D, Death Certificate.)  At the time of his death, Basic Group Life benefits in the amount of $38,500 and Optional Employee Life benefits in the amount of $115,500 (collectively, "life insurance benefits") were payable under the ERISA Plan to the proper beneficiary.

On May 24, 2007, Defendant MetLife received a letter from Plaintiff's counsel enclosing the Letters of Authority appointing Plaintiff Belinda McCalip as Personal Representative of the Estate of Manuel McCalip, Jr. and making a claim for life insurance benefits on behalf of the Estate.  (Def.'s Ex. E.)

On June 18, 2007, MetLife denied the Estate's claim because the language in the Judgment of Divorce could not be considered a waiver of an interest in an employee benefit plan governed by ERISA.  MetLife also informed Plaintiff of its ability to pursue an administrative appeal.  (Def.'s Ex. F.)

On July 25, 2007, Plaintiff's counsel appealed from the June 18, 2007 denial of the

3

Plan benefits.  In that appeal, Plaintiff contended that, under the terms of the Judgment of

Divorce, Yvette McCalip had (1) waived her interest to the life insurance benefits, and (2)

restored her maiden name – Jones – thus precluding her from being the "named

beneficiary" under the decedent's ERISA Plan documents.  (Def.'s Ex. G.)

On March 7, 2008, Plaintiff's counsel forwarded to MetLife a copy of an Amended

Judgment of Divorce entered in Wayne County Circuit Court after decedent's death.  (Def.'s

Ex. H.)  As to decedent's life insurance benefits, the Amended Judgment amends the

earlier Consent Judgment of Divorce as follows:

> The life insurance provision, same being number 7 of the aforesaid Divorce
> Judgment is hereby modified and amended so as to read and provide as follows:
>
> #7.  Life Insurance.  Except as otherwise provided in this judgment, this
> judgment terminates the rights each party has to the proceeds of the other's
> contracts or policies of life insurance, endowments, or annuities as a named
> beneficiary or by assignment during or in anticipation of marriage; and in
> particular, the rights of Yvette Jones (formally [sic] McCalip) in and to any
> benefits from the Defendant's coverage through Johnson Control #122212,
> Metropolitan Life Insurance, Utica, NY same being terminated, *Nunc pro tunc*,
> claim #20705001648.

(Def.'s Ex. H, 3/7/08, Am. Judg. of Divorce at 2-3.)

On June 12, 2008, MetLife notified Plaintiff's counsel and Yvette Jones that, after

reviewing their claims, it was unable to resolve such claims without exposing the Plan to

the danger of double liability.  MetLife further advised that if the parties could not reach an

agreement regarding entitlement to the life insurance benefits, it would commence an

interpleader action.  (Def.'s Ex. I.)

On July 1, 2008, Plaintiff commenced this action against Defendant MetLife in this

Court alleging state-law claims of breach of contract and violation of Mich. Comp. Laws §

500.2006 because MetLife failed to timely pay Plaintiff's insurance claim.  The rival

4

claimant, Yvette Jones (formerly McCalip), is not named as a party in this action.

## II.   Analysis

On January 26, 2009, the United States Supreme Court issued a decision that governs the result here.   In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 129 S. Ct. 865 (2009), under circumstances similar to those presented here, held that ERISA plan administrators must pay Plan benefits to the beneficiary named in Plan documents.   In a footnote, the *Kennedy* Court observed that its decision does not address the issue "whether the Estate could [bring] an action in state or federal court against [the named beneficiary] to obtain the [ERISA Plan] benefits *after they were distributed.*"   *Id.* at 875 n.10 (emphasis added).

This matter is now before the Court on Defendant MetLife's motion for a declaratory judgment confirming that the life insurance benefits payable under the Johnson Controls' ERISA Plan by reason of Manuel McCalip's death are payable to Yvette Jones (formerly McCalip), the last beneficiary designated by the decedent in his ERISA Plan documents. The named beneficiary is not a party to this lawsuit.   Accordingly, the issue before the Court is simply whether application of *Kennedy* and consideration of the relevant Plan documents requires that Defendant MetLife pay life insurance benefits to the named beneficiary.   There is no need to address any future claims that Plaintiff may assert against the named beneficiary *after* Defendant MetLife pays ERISA Plan benefits to her.

### A.   Plaintiff's State-Law Claims Against MetLife Are Preempted

There is no dispute that the life insurance benefits at issue here are provided under an ERISA Plan.   Plaintiff's claims for these benefits under the Plan arise exclusively under ERISA, 29 U.S.C. § 1132(a)(1)(B).   Accordingly, Plaintiff's breach of contract claim is

5

construed as a claim for benefits under § 1132(a)(1)(B), and Plaintiff's claim under Michigan Complied Law § 500.2006, regarding the timely payment of insurance claims, is preempted by ERISA. *See Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987); *Miller v. Met. Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir. 1991).

### B. Plan Document Rule Requires Payment to Designated Beneficiary; Ex-Wife

Plaintiff concedes that neither the Consent Judgment of Divorce nor the Amended Judgment of Divorce satisfy the requirements to constitute a Qualified Domestic Relations Order ("QDRO") under section 206(d)(3) of ERISA, 29 U.S.C. § 1056(d)(3). (Pl.'s Resp. at 2.) Moreover, it is not disputed that, at the time of his death, Manuel McCalip's ERISA Plan documents designated his ex-wife as the beneficiary of his life insurance benefits. Accordingly, under *Kennedy*, those ERISA Plan insurance benefits must be paid to the Plan Participant's designated beneficiary; decedent's ex-wife, Yvette Jones.

In *Kennedy*, the Court considered whether ERISA's "limitation on assignment or alienation" of ERISA plan benefits "invalidated the act of a divorced spouse, the designated beneficiary under her ex-husband's ERISA pension plan, who purported to waive her entitlement by a federal common law waiver embodied in a divorce decree that was not a QDRO." 129 S. Ct. at 868. It held that "such a waiver is not rendered invalid by the text of the antialienation provision [of ERISA], but that the plan administrator properly disregarded the waiver owing to its conflict with the designation made by the former husband in accordance with the plan documents." *Id.*

Similar to the facts presented here, in *Kennedy*, the ERISA plan participant was divorced before he died. *Id.* at 869. He and his ex-wife had entered into a divorce decree

6

where his ex-wife was "divested of all right, title, interest, and claim in and to" all of decedent's ERISA plan benefits.  *Id.* (internal quotation marks and citation omitted).  The decedent in *Kennedy* failed to execute any plan documents removing his ex-wife as the beneficiary under his employer-provided savings and investment plan("SIP") even though he had executed a new beneficiary-designation form naming his daughter as the beneficiary under his employer-provided pension and retirement plan.  Both plans were governed by ERISA.  *Id.*  Upon his death, decedent's daughter became the executor of his estate and asked his employer to distribute the SIP benefits to his estate.  When the decedent's employer paid the funds to his ex-wife instead because she was the named beneficiary in the plan documents, the estate sued the employer and plan administrator arguing that "the divorce decree amounted to a waiver of the SIP benefits" on the ex-wife's part, and further argued that these defendants "violated ERISA by paying the benefits to [decedent]'s designee."  *Id.*  Ultimately, the Supreme Court "granted certiorari to resolve a split among the Courts of Appeals and State Supreme Courts over a divorced spouse's ability to waive pension plan benefits through a divorce decree not amounting to a QDRO." *Id.* at 870.  That is the precise issue presented here.

The *Kennedy* Court first rejected the argument that ERISA's QDRO provisions "supply the *sole* exception to the anti-alienation provisions" in that statute.  *Id.* at 873 (emphasis in original).  It explained:

> the negative implication of the QDRO language is not that simple.  If a QDRO provided a way for a former spouse . . . merely to waive benefits, this would be powerful evidence that the antialienation provision was meant to deny any effect to a waiver within a divorce decree but not a QDRO, else there would have been no need for the QDRO exception.  But this is not so, and [the employer]'s argument rests on a false premise.  In fact, a beneficiary seeking only to relinquish her right to benefits cannot do this by a QDRO, for a QDRO by

7

definition requires that it be the "creat[ion] or recogni[tion of] the existence of an alternate payee's right to, or assign[ment] to an alternate payee [of] the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(1). <u>There is no QDRO for a simple waiver; there must be some succeeding designation of an alternate payee</u>. Not being a mechanism for simply renouncing a claim to benefits, then, the QDRO provisions shed no light on whether a beneficiary may waive a non-QDRO.

*Id.* (internal footnote omitted) (emphasis added).

The conclusion that a non-QDRO waiver escaped nullification under ERISA's antialienation provision, however, did not resolve the issue before the Court in *Kennedy* or presently before this Court. Rather, the Court still had to answer the core question "whether the plan administrator was required to honor [the ex-wife]'s waiver [in the divorce decree] with the consequence of distributing the SIP balance to the Estate." *Id.* at 875. The *Kennedy* Court held that the plan administrator was not required to honor the waiver. Rather, the plan administrator had a "statutory duty" to pay the benefits to the decedent's ex-wife "in conformity with the plan documents." *Id.* The Court observed that ERISA requires that the plan administer act in accordance with the Plan documents and "provides no exemption from this duty when it comes time to pay benefits." *Id.* By doing so, ERISA provides a simple administrative rule as opposed to "less certain rules" that would force plan administrators "to examine a multitude of external documents" and "be drawn into litigation like this over the meaning and enforceability of purported waivers." *Id.* at 875-76 (internal quotation marks and citations omitted). The *Kennedy* Court observed that its decision points "out the wisdom of protecting the plan documents rule." *Id.* at 877. Applying that rule, it determined that decedent's ex-wife was his designated beneficiary with regard to his SIP benefits. It observed that, although the Plan "provided an easy way for [decedent] to change the designation, . . . he did not." *Id.* Moreover, the decedent's

8

"designation of [his ex-wife] as his beneficiary was made in a way required [under the Plan documents]; [his ex-wife]'s waiver was not." *Id.* Accordingly, "the plan administrator properly distributed the SIP benefits" to her. *Id.*

Applying the *Kennedy* "plan documents rule" here, MetLife has shown that Manuel McCalip's designation of his ex-wife as beneficiary to his ERISA Plan life insurance benefits was made in a way required under the Plan, and her waiver as to those benefits was not. MetLife is thus required to distribute the life insurance benefits owed under the ERISA plan to his designated beneficiary; Yvette Jones (formerly McCalip).

That a constructive trust may subsequently be imposed on the life insurance benefits *after* they are paid by MetLife to Yvette Jones does not alter this Court's decision. Yvette Jones, the named beneficiary, is not a party to this lawsuit. This lawsuit addresses only Defendant MetLife's responsibilities under the ERISA plan it administers for Johnson Controls.[1]

## III.   Conclusion

For the above-stated reasons, Defendant MetLife's motion for declaratory judgment is GRANTED.

---

[1]After MetLife distributes the life insurance proceeds to the named beneficiary as required by ERISA, there is nothing here that precludes Plaintiff from filing an action in state court against the named beneficiary alleging the waiver and constructive trust arguments that are not pertinent to the ERISA claims raised here against MetLife. *See, e.g., Sweebe v. Sweebe*, 712 N.W.2d 708, 713 (Mich. 2006) (leaving open the possibility of a lawsuit by an estate against the named beneficiary "alleging that she waived her right to retain the proceeds.").

9

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 30, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

10